J-S10009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT FELTS | : | |
| | : | |
| Appellant | : | No. 2090 EDA 2022 |

Appeal from the PCRA Order Entered August 1, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0901423-2001

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 6, 2023**

Robert Felts appeals from the order dismissing his fourth petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On June 16, 2001, Felts and Zachary Alston entered the residence of Charles Jackson, where Jackson's brother, Robert Lee Jackson ("Robert"), and Robert's fiancée, Mary Francois Jackson ("Mary"), were guests. Felts and Alston demanded to know where "it" was, but none of the victims knew what "it" was. The perpetrators eventually brought the three victims to the basement, where a scuffle ensued, and Jackson was shot and killed and Felts was shot in the left leg. Felts and Alston escaped from the house. Marcus Gibson, who was waiting in a vehicle outside the residence, drove Felts to the hospital following the shooting. Subsequently, at the hospital, Robert

identified Felts as one of the culprits. Thereafter, Detectives Richard Harris and George Pirrone interviewed Felts, who gave an inculpatory statement to police, admitting that he participated in the robbery, but did not shoot the victim. Felts also identified Alston and Gibson as the other individuals involved in the incident. The police arrested Felts and the Commonwealth charged him with numerous crimes.

The matter proceeded to a jury trial in 2003. Robert identified Felts as one of the perpetrators, and Gibson testified that Felts was one of the co-conspirators. Further, Felts's counsel conceded that Felts was inside the home and urged a finding that Felts committed third-degree murder, rather than first-degree murder. The jury found Felts guilty of first-degree murder, three counts of robbery, burglary, conspiracy, a violation of the Uniform Firearms Act, possession of an instrument of crime, and two counts of recklessly endangering another person. The trial court sentenced Felts to an aggregate sentence of life imprisonment. This Court affirmed his judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Felts*, 855 A.2d 130 (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, *Commonwealth v. Felts*, 860 A.2d 121 (Pa. 2004).

Felts filed three prior PCRA petitions, all of which were denied or dismissed. This Court affirmed. *See Commonwealth v. Felts*, 175 A.3d 379 (Pa. Super. 2017) (unpublished memorandum), *appeal denied*, 182 A.3d 439

(Pa. 2018); ***Commonwealth v. Felts***, 60 A.3d 572 (Pa. Super. 2012) (unpublished memorandum); ***Commonwealth v. Felts***, 965 A.2d 293 (Pa. Super. 2008) (unpublished memorandum), *appeal denied*, 973 A.2d 1005 (Pa. 2009).

On May 16, 2018, Felts filed, *pro se*, the instant PCRA petition, followed by a supplemental petition. The PCRA court appointed Felts counsel, who filed an amended petition, as well as supplemental petitions. Felts's petition is premised upon newly-discovered evidence of previously undisclosed pattern and practice of misconduct by Philadelphia Police Department detectives, which Felts claims established that the detectives in this case used unconstitutional methods in obtaining his confession and victim statements. The PCRA court issued a Pa.R.Crim.P. 907 notice. Thereafter, the PCRA court dismissed the petition without a hearing. This timely appeal followed.

On appeal, Felts raises the following question for our review:

> Did the PCRA [c]ourt err in finding, without a hearing, that [Felts's] claim that the Commonwealth failed to disclose evidence that Det[ective Jeffrey] Piree had a history of misconduct and evidence of an unconstitutional interrogation pattern and practice utilized by homicide detectives in [Felts's] case was not timely filed and/or otherwise lacked merit?

Appellant's Brief at 2.

This Court's standard of review regarding a PCRA court's dismissal of a PCRA petition is whether the PCRA court's decision is supported by the evidence of record and is free of legal error. ***See Commonwealth v. Garcia***, 23 A.3d 1059, 1061 (Pa. Super. 2011). Further, there is no absolute right to

a PCRA hearing, and we review dismissal "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." **Commonwealth v. Burton**, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*) (citation omitted).

Under the PCRA, any PCRA petition "shall be filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in … the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." **Id.** § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. **See Commonwealth v. Albrecht**, 994 A.2d 1091, 1093 (Pa. 2010).

Here, Felts's judgment of sentence became final on December 16, 2004, after the time to seek review with the United States Supreme Court expired. **See Commonwealth v. Fantauzzi**, 275 A.3d 986, 995 (Pa. Super. 2022). Accordingly, Felts had until December 16, 2005, to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). Hence, Felts's fourth PCRA petition, filed on May 16, 2018, was untimely under the PCRA.

However, Pennsylvania courts may consider an untimely PCRA petition where the petitioner can explicitly plead and prove one of three exceptions:

> (i)      the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution

- 4 -

or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)  the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)  the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.*

Here, Felts invokes the newly-discovered facts exception, which

requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted). Due diligence does not require "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." *Commonwealth v. Shiloh*, 170 A.3d 553, 558 (Pa. Super. 2017) (citation omitted); *see also Commonwealth v. Burton*, 158 A.3d 618, 638 (Pa. 2017) (holding "the presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) *does not apply* to *pro se* prisoner petitioners.") (emphasis in original)). Moreover, courts must analyze the nature of the underlying claim

- 5 -

for the limited purpose of determining whether the newly-discovered facts alleged are based on information that is relevant to that claim. *See Commonwealth v. Shannon*, 184 A.3d 1010, 1017 (Pa. Super. 2018) (noting that while "we need not find a 'direct connection' between the newly-discovered facts and the claims asserted by a petitioner, the statutory language requires there be some relationship between the two").

Felts argues that newly-discovered facts of an undisclosed pattern and practice of misconduct by homicide detectives who investigated his case violated his right to due process and a fair trial. *See* Appellant's Brief at 9, 32. Felts contends that police misconduct has usually been kept secret and is not available to the public; however, in April 2018, his wife learned about the "Do Not Call" list.[1] *See* Appellant's Brief at 13, 17-18. Felts claims that once he was aware of the list, he investigated misconduct committed by the detectives involved in his case, and, therefore, he exercised due diligence in filing the PCRA petition. *See id.* at 13-14, 18-21. Citing to *Brady v. Maryland*, 373 U.S., 83 (1963), Felts asserts the Commonwealth failed to timely disclose that a number of detectives regularly participated in a specific pattern of misconduct, including targeting the vulnerable, threatening witnesses and

_____

[1] Specifically, the Philadelphia District Attorney's Office compiled the "Do Not Call" list, which listed police officers whom the district attorney's office tried to keep off the witness stand because of a wide range of wrongdoing, including lying and racial bias. *See* https://www.nbcphiladelphia.com/news/local/29-problem-cops-named-in-philadelphia-district-attorneys-do-not-call-list/203166/ (last visited May 4, 2023).

- 6 -

suspects, physical abuse, manipulation, and fabrication of evidence. ***See id.*** at 15-16, 18, 21-22.

Felts highlights that Detective Piree, who took Robert's statement, has a history of misconduct, specifically for playing part in maliciously prosecuting three innocent individuals. ***See id.*** at 21-27, 29-30. Felts baldly complains that the other detectives in this case followed this improper pattern and practice of misconduct, which tainted the entire investigation and prosecution. ***See id.*** at 27. To that end, Felts argues that Detectives Harris and Pirrone coerced his inculpatory statement at the hospital and forced him to sign the statement. ***See id.*** at 27-28. Felts notes that although the trial court denied his motion to suppress, it raised a concern about the voluntariness of his inculpatory statements because the detectives took the statement in the hospital. ***See id.*** at 33-34. Further, Felts maintains that Gibson's statement to detectives was not written verbatim and omitted information, and detectives wrote Mary's statement and she signed it without reading it. ***See id.*** at 28-31.

Felts asserts that this evidence was material and would have resulted in a different result had it been disclosed prior to the jury trial, as it would have undercut his confession as well as the witnesses' testimony. ***See id.*** at 32, 34, 35; ***see also id.*** at 32-33 (claiming that he would have called all the detectives who worked on the case as witnesses at trial to establish their

practice of coercing confessions and statements). Felts seeks an evidentiary hearing or the vacating of his convictions. ***See id.*** at 36.

Here, Felts does not meet the newly-discovered fact exception, because he did not adequately demonstrate any connection between the alleged newly-discovered facts of Detective Piree's actions in other cases and the underlying substantive issues raised in this case. ***See Shannon***, 184 A.3d at 1017 (noting that while a direct connection is not needed, the appellant must show "some relationship" between his underlying claim and the newly-discovered fact). In this case, Detective Piree was only minimally involved in this case, as he did not testify at trial and merely took Robert's statement identifying Felts as one of the perpetrators. ***See*** N.T., 5/25/22 at 4 (wherein the trial court notes that "the only tangible evidence of said misconduct relates to officers that were only minimally involved in this case, if at all, and who did not testify at trial."). Felts does not cite to any place in the record where Robert indicated that Detective Piree forced him to identify Felts as one of the perpetrators or sign his statement. In any event, Robert testified at trial and explicitly stated that when he saw Felts at the hospital, he "knew he was the one." N.T., 1/30/03, at 136; ***see also id.*** at 99-100 (wherein Robert stated he made a positive identification of Felts as one of the perpetrators). Therefore, Felts fails to properly invoke the newly-discovered facts exception, as he does not explain how Detective Piree's conduct in other cases was relevant to his case. ***See Shannon***, 184 A.3d at 1017.

Furthermore, Felts does not make even a tenuous connection between Detective Piree's misconduct in other cases and the other detectives who worked on this case or establish that any alleged misconduct by the other detectives affected his 2003 trial. In effect, as the PCRA court found, Felts is merely attempting to relitigate his motion to suppress his inculpatory statement. *See* N.T., 5/25/22, at 4. Here, Felts fails to argue or demonstrate that Detectives Harris and Pirrone, who took his inculpatory statement, were identified in the "Do Not Call" list or had committed other misconduct. Significantly, not only did Felts admit to entering the home armed with a handgun and identify Alston and Gibson as the other individuals involved in the conspiracy, but his trial counsel also conceded that he was in the house during the murder at trial. *See* N.T. 1/31/03, at 156-65; *see also* N.T., 2/3/03, at 39 (wherein Felts's trial counsel stated that Felts never denied that he was in the house at the time the murder occurred). Moreover, Detective Harris further testified that Felts confessed to his participation in the murder without any urging by the detectives. *See* N.T., 1/31/03, at 178.

Likewise, Felts fails to establish that Detectives Harris and Griffin, who took statements from Gibson and Mary, had committed misconduct. Although Gibson explicitly testified that the detectives failed to include in his statement that he and Felts were planning to buy birthday presents for his daughter on the day in question, *see id.* at 40-41, he indicated that nothing else was missing from the statement and he explicitly identified Felts as one of the

conspirators. *See id.* at 41-52, 55-56. Moreover, Mary also testified at trial, but could not provide an identification of Felts. *See* N.T., 1/30/03, at 162-63. Mary further indicated that she did not read her statement before signing it, *see id.* at 181-83, but she never testified that the detectives fabricated any part of her statement. Accordingly, Felts's speculative argument does not invoke the newly-discovered facts exception, as he fails to establish that the other detectives engaged in misconduct, let alone did so in his case. *See* **Shannon**, 184 A.3d at 1017.

In light of the foregoing, Felts filed an untimely PCRA petition and did not properly invoke the newly-discovered facts timeliness exception. Consequently, because there are no issues of material fact, the PCRA court properly dismissed Felts's fourth PCRA petition without a hearing. *See* **Burton**, 121 A.3d at 1067.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023

- 10 -